**Dick Andrew GEE, Petitioner-Appellee,**

v.

**UNITED STATES of America, Respondent-Appellant.**

**No. 71-1063.**

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1971.

James R. Gough, Asst. U. S. Atty., Anthony J. P. Farris, U. S. Atty., Edward B. McDonough, Jr., Carl Walker, Jr., Asst. U. S. Attys., Houston, Tex., for respondent-appellant.

David H. Berg, Houston, Tex., for petitioner-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GEWIN, Circuit Judge:

In the presence of counsel, Dick Andrew Gee pled guilty to a charge of failing to submit to induction in the armed forces. He was sentenced to four years in prison. Shortly thereafter he filed a motion to vacate the sentence under 28 U.S.C.A. § 2255 and a motion to modify the sentence under Rule 35 F.R.Cr.P. The district court conducted a hearing on the motion to vacate on June 23, 1970, but no evidence was presented and no witnesses were heard. The attorneys for both parties merely conferred with the judge. During this conference the district judge decided that it was proper to review Gee's selective service record in light of Welsh v. United States.[1] He thereafter granted the motion to vacate and entered the following order:

> It is hereby ordered, adjudged and decreed that petitioner Dick Andrew Gee's Motion to Vacate Sentence is granted.
>
> Petitioner is hereby afforded the classification of conscientious objector under the Selective Service Act of 1967. Petitioner will be credited for the seven months of his imprisonment by deducting such time from that pro-

---

1. 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970).

vided for civilian employment by the conscientious objector in accordance with 50 U.S.C. App. § 456(j).

Done this 17th day of December, 1970, at Houston, Texas.

We conclude that the district court committed error by entering the quoted order, and therefore, we vacate it and remand the case to the district court.

At the age of eighteen Gee properly registered with his local draft board. He made no claim of being a conscientious objector at that time, and during the four years he attended college he received a student deferment. Upon completion of his college course he was ordered to report for a physical examination. He was found physically fit and was ordered to report for induction. After receipt of the induction notice he wrote to his local board on November 25, 1969 requesting for the first time classification as a conscientious objector. On November 26, 1969, Gee returned Selective Service Form 150 to his local board. The board granted him a personal interview.[2] Following the interview he was ordered to report for induction, without any explanation as to what action, if any, was taken by the board on his conscientious objector claim. Gee appeared as ordered, but refused to step forward for induction.

The government has contended throughout this proceeding that Gee's plea of guilty should preclude further inquiry. We think this contention is well founded. It is settled in this circuit that a plea of guilty waives all defects and defenses which are not

jurisdictional.[3] However, these decisions have often involved defects which arose or defenses which were available *prior* to the plea.[4]

Gee contended and the district court agreed that *Welsh, supra,* which was decided after his plea of guilty established a new standard by which local boards must consider conscientious objector claims. Thus, the argument is that if Gee's claim were evaluated under the *Welsh* standard, his conviction would have to be set aside.

In its memorandum opinion, Gee v. United States, 319 F.Supp. 581 (S.D. Texas 1970), the district court relied upon this court's decision in United States v. Lucia[5] in which a defendant who had pled guilty sought to set his conviction aside upon the basis of a judicially created defense which arose subsequent to his plea. In *Lucia* the court held that an accused could not waive a right not yet in existence, thus permitting the post-plea defense to be applied retroactively. The district court correctly noted that *Lucia* was affirmed upon rehearing en banc.[6] However, it did not add that the portion of the original opinion upon which it relied for its waiver argument was expressly withdrawn by the court en banc:

A majority of the Court concludes that because of the holding on the retroactive effect of *Marchetti* and *Grosso* there is no need to discuss waiver. Section I [dealing with waiver] of the panel's decision is therefore withdrawn.[7]

---

2. The final sentence in the letter sent to Gee by the Board notifying him of the interview read as follows:

   This appearance does not take the place of the personal appearance you may request after classification action, *if your classification is reopened.* (emphasis added)

3. E. g., Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971); Smith v. Smith, 433 F.2d 582 (5th Cir. 1970); Zales v. Henderson, 433 F.2d 20, 23 (5th Cir. 1970). *See also* Hillaire v. United States, 438 F.2d 128 (5th Cir. 1971).

4. *Compare* Alexander v. United States, 290 F.2d 252 (5th Cir.) cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961), *and* United States v. Lucia, 416 F.2d 920 (5th Cir. 1967), aff'd en banc, 423 F.2d 697 (5th Cir. 1970), cert. denied, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971).

5. 416 F.2d 920 (5th Cir. 1967).

6. 423 F.2d 697 (5th Cir. 1970).

7. 423 F.2d at 697.

Since the district court did not decide whether *Welsh* should be retroactive,[8] its reliance on *Lucia* was misplaced. In addition, we find *Lucia* distinguishable in that there the effect of applying the Supreme Court decisions of Marchetti v. United States[9] and Grosso v. United States[10] retroactively was to invalidate the statute upon which the convictions were based. *Welsh* clearly does not invalidate the statute under which Gee was convicted.[11] But even assuming that the district court correctly stated the legal principles as to waiver of post plea defenses,[12] we find it unnecessary to rule on the question since we find

8. The district court stated: "It need not be held that Welsh is fully retroactive or to what extent it is retroactive at all." 319 F.Supp. at 585.

9. 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

10. 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

11. The district court noted that *Lucia* and the instant case are dissimilar:

> This Court is duly mindful that in *Lucia, supra*, the question was the retroactivity of new constitutional standards while here the question is one concerning new statutory standards of application.

319 F.Supp. at 585. But cf. United States v. Kelly, 314 F.Supp. 500 (E.D. N.Y.1970), where the court held that the Supreme Court decisions in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970) and Breen v. Selective Service Local Board No. 16, 396 U.S. 460, 90 S.Ct. 661, 24 L.Ed.2d 653 (1970) are to be applied retroactively even though the defendant had pled guilty to a charge of failing to submit to induction. Defendant had mailed his registration certificate and notice of classification to the board—he refused to keep them. The board declared him delinquent and accelerated his induction. *Gutknecht* and *Breen* invalidated the practice of accelerating the induction of those who fail to perform duties under the act. The district court said the Supreme Court decisions invalidated the entire proceedings, i. e., there should not even have been a prosecution. *Welsh* does not have the same impact on the instant case.

12. While the Supreme Court has not ruled on the issues of waiver raised in *Lucia*, it has in a recent trilogy of cases attached a new aura of finality to a plea of guilty. These cases, Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1971); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) were presented to the district court by the government in the instant case in support of its guilty plea argument. The court found them "inapposite." We find them inapposite only because we do not decide the question of the effect of a post-plea defense. They are, however, pertinent to that issue.

In *Brady* the Court held that even though a guilty plea by a defendant indicted for violating the federal kidnapping statute might have been based partially upon the fear of the death penalty, which was possible if convicted by a jury but not possible upon a plea of guilty, the plea was nevertheless voluntary and knowingly made. The Court reached this result despite the fact that in United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) it had held the portion of the statute which presented this alternative to be unconstitutional. The Court held that *Jackson* did not vitiate his plea of guilty. While the Court was perhaps primarily concerned with the voluntariness of the plea, the following language is pertinent:

> More particularly, absent misrepresentation or other impermissible conduct by state agents, cf. Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948) *a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.*

397 U.S. at 757, 90 S.Ct. at 1473, 25 L.Ed.2d at 761 (emphasis added)

In *McMann* the Court rejected a habeas corpus petitioner's argument that because his plea of guilty was made without benefit of the court's later decision in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) (preventing a conviction based on a coerced confession), his conviction must be reversed. He contended that he had confessed under coercion prior to his plea and that his plea was prompted by his belief that the coerced confession would have been admissible against him. The Court distinguished cases in which *Jackson* had been applied retroactively by noting that in those cases the defendant went to trial and his conviction was based in part on

that *Welsh* supplied Gee with no *new* defense.

The district court felt very strongly that *Welsh* created a new standard which if applied to Gee compelled classification as a conscientious objector. However, after a comparison of *Welsh* with its predecessor, United States v. Seeger,[13] we conclude that *Welsh* announced no new standard, merely a clarification of *Seeger*. In *Seeger,* Justice Clark described the test of conscientious objection:

> It is essentially an objective one, namely, does the claimed belief occupy the same place in the life of the objector as an orthodox belief in God holds in the life of one clearly qualified for exemption.[14]

In *Welsh*, Justice Black stated:

What is necessary under Seeger for a registrant's conscientious objection to all war to be "religious" within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions.[15]

Justice Black went on to reject the government's argument that the facts presented in *Welsh* were distinguishable from those presented in *Seeger*. Although *Seeger* is not the model of clarity, we think it was certainly adequate to place Gee on notice that his claim of conscientious objection based on nonreligious beliefs was not so foreclosed by the existing law as to compel a guilty plea.[16]

■ Even if *Welsh* had been decided before Gee was classified, since he waited until after receipt of his notice of induction to file his claim, there was no requirement that the board hear such a claim unless new facts were presented showing a change of status caused by circumstances beyond his control.[17] No such facts appear in the record. Only recently in United States v. Solomon [18] this court stated the prerequisites neces-

---

the coerced confession, "a constitutionally unacceptable basis for conviction", while in *McMann* the conviction was based solely upon "his counseled admission in open court that he committed the crime charged against him." The Court then added:

> It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. *Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.*

397 U.S. at 774, 90 S.Ct. at 1450, 25 L.Ed.2d at 775 (emphasis added).

In *Parker* the Court followed *Brady* and held inter alia that a 15 year old boy's plea of guilty could not be said to be involuntary even though it was induced by the boy's desire to limit the maximum

possible penalty to life imprisonment rather than death as authorized if he were tried by jury.

13. 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

14. Id. at 184, 85 S.Ct. at 863, 13 L.Ed.2d at 747.

15. 398 U.S. at 339–340, 90 S.Ct. at 1796, 26 L.Ed.2d at 318–319.

16. *See* Quijada Gaxiola v. United States, 435 F.2d 264 (9th Cir. 1970) where the court held that a defendant's plea of guilty waived a fifth amendment defense under Leary since it was based on *Marchetti-Grosso* rationale and thus that defendant had "ample reason to foresee the Leary decision." *See also* United States v. Taylor, 448 F.2d 349 (5th Cir. 1971) [No. 29198, June 2, 1971].

17. 32 C.F.R. § 1652.2; United States ex rel. Johnson v. Irby, 438 F.2d 114 (5th Cir. 1971); United States v. Lee, 443 F.2d 897 (5th Cir. 1971); Robertson v. United States, 417 F.2d 440 (5th Cir. 1969) (en banc).

18. 450 F.2d 456 (5th Cir. 1971).

sary for a reopening after notice of induction has been mailed:

> Thus it would seem that after the order to report has been mailed, the prima facie case which registrant must make is twofold: first, he must show that new facts present a prima facie case for exemption, and in addition he must show that the new facts resulted from circumstances over which the registrant had no control.[19]

The court went on to hold that where no prima facie case is established, due process does not require that the board give its reasons for refusing to reopen.[20]

In Ehlert v. United States [21] the Supreme Court made it clear that a late crystallization of beliefs is not such a change in circumstances that would require a board to reopen a registrant's case. Having already received his notice of induction, and having been denied a reopening of his case by the board, under *Ehlert,* Gee's only alternative was to present his claim *after induction* through Army channels.[22]

We find no defect in the board's handling of Gee's case, but even if the board had erred in some respect, inherent in Gee's plea of guilty was a waiver of all procedural defects. Gee has not raised a defect in the board's procedure which rises to the jurisdictional level necessary to vitiate his plea of guilty.

Moreover, it is our opinion that the district court exceeded its authority by ordering that Gee be afforded the classification of conscientious objector as set forth in the court's final order dated December 17, 1970. The December order followed the court's memorandum opinion in which it had granted the motion to vacate subject to the condition that Gee indicate to the court within thirty days his willingness to accept civilian duty.[23]

Courts do not sit as super draft boards and have no authority to substitute their notions of what a classification should be in lieu of the classification given by the board. The decisions of local boards made in conformity with the law and authorized regulations are

---

19. Id. at 458.

20. *Solomon* is distinguishable from United States v. Stetter, 445 F.2d 472 (5th Cir. 1971) in that in *Stetter* the request for reclassification came *before* notice of induction had been mailed, and the court found that a prima facie case for reclassification had been made.

21. 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971).

22. Id. at 105–107, 90 S.Ct. 1319, 28 L.Ed. 2d at 632–633. Not only this circuit but others as well have construed *Ehlert* as largely precluding presentation of conscientious objector claims to the local board after notice of induction has been received. *See* United States v. Collins, 445 F.2d 653 (4th Cir. 1971); Wright v. Ingold, 445 F.2d 109 (7th Cir. 1971); United States v. Alvarado, 444 F.2d 255 (9th Cir. 1971); United States v. Lee, 443 F.2d 897 (5th Cir. 1971); United States v. Watson, 442 F.2d 1273 (8th Cir. 1971). See also United States v. Taylor, 448 F.2d 349 (5th Cir. 1971).

23. The following is from the memorandum opinion of the district court dated November 13, 1970:

> Should petitioner be granted conscientious objector classification and subsequently fail to respond to an order directing him to report for civilian duty in lieu of military service, he would have committed a new offense under Section 12 and thereby be vulnerable to prosecution and conviction. If petitioner's beliefs are such that he could not consistently with good conscience perform such civilian duty, no useful purpose would be served by allowing him to replead. Accordingly, petitioner's sentence will be vacated only upon the condition that he indicate to the Court within thirty (30) days from the entry hereof his willingness to accept civilian duty.
>
> It is, therefore, ordered, adjudged, and decreed that the motion of Dick Andrew Gee to vacate the sentence imposed upon him in CR. 70–H–53 be, and the same is hereby, granted, subject to the condition presented above. 319 F.Supp. at 585.

final even though courts may disagree with such decisions.[24]

For the reasons stated herein the court should have denied Gee's motion to vacate. The order of the district court is vacated and the case is remanded with directions that an order be entered denying the motion to vacate.[25]

Vacated and remanded with directions.

24. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Robertson v. United States, 417 F.2d 440 (5th Cir. 1969); McCoy v. United States, 403 F.2d 896 (5th Cir. 1968).

25. Gee filed his motion in the district court within approximately two weeks after he had entered a plea of guilty to the indictment. The motion sought to vacate, or in the alternative, to modify the sentence. We have reviewed only the final judgment of the district court which granted Gee's motion to vacate sentence and "afforded" him a classification different from the one given by the board. The court did not specifically rule on the alternative ground of the motion which sought to modify the sentence. This alternative ground, which was expressly based upon Rule 35 F.R.Cr.P., alleged "that the circumstances outlined above militate in favor of the reduction of the sentence imposed upon the defendant herein." The alternative prayer of the motion was "that the sentence pronounced upon him be reduced." We do not reach the question whether the court has authority upon remand to reduce the sentence in accordance with Rule 35 F.R. Cr.P. That question is one which should be initially resolved by the district court. See Johnson v. United States, 235 F.2d 549 (5th Cir. 1956); United States v. Ursini, 296 F.Supp. 1152 (D.C.Conn. 1968); 2 C. Wright, Fed. Practice & Procedure § 587, at 573 (1969). See also Lott v. United States, 309 F.2d 115 (5th Cir. 1962), cert. denied, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 498 (1963).