**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Lee THOMAS, Defendant-
Appellant.**

**No. 71-1262
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1972.

Rehearing Denied Feb. 7, 1972.

---

* ▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Lawrence Kanzer, Miami, Fla. (court appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., by Arthur W. Tifford, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Edward Lee Thomas appeals from a conviction for refusing to be inducted into the Armed Forces under the Selective Service Act, 50 U.S.C. App. § 462. A jury found Thomas guilty and the Court sentenced him to thirty months' imprisonment. On appeal Thomas assigns as error alleged violations of constitutional rights by his Local Board which declined to change his I–A classification and grant registrant conscien-

tious objector status and a paternity exemption. Furthermore, he claims that his induction was accelerated because of the Board's finding that he was a delinquent, and accordingly that the Board's action violated the principles enunciated in the decision of the Supreme Court in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). We reject each of appellant's assertions and affirm the conviction.

On August 31, 1967, Thomas completed a "Classification Questionnaire" showing that his wife was expecting a child in January 1968. On August 31, 1967, the Local Board wrote Thomas inquiring about the expected child. The letter was addressed to "Thomas E. Lee," registrant's name having been erroneously inverted, but was mailed to the correct street address. This Board received no response to its inquiry. On November 15, 1967, the Board again wrote Thomas asking that he furnish a pregnancy statement from his wife's doctor verifying that he was to be a father. The Board told him that unless it received the statement Thomas would be classified I–A at the next Board meeting. Again, the Board received no response. On November 21, 1967, at the next Board meeting, Thomas was classified I–A. The Board mailed his classification certificate and SSS Form 217 to him. Form 217 notified him of his right to appeal.

On June 5, 1968, some seven months after being classified I–A, Thomas was ordered to report for a physical examination. He did not comply. On July 23, 1968, he was declared delinquent and a delinquency notice was mailed to him. Up to this point the Board had continued to address him as "Thomas E. Lee" or "Thomas Edward Lee," but the correct mailing address furnished by registrant was always used. On September 25, 1968, Thomas was ordered to report for induction on October 16, 1968. This time and thereafter he was correctly addressed as "Edward Lee Thomas" by the Board. He did not report. On December 3, 1968, Thomas was reported to the United States Attorney as a delinquent, but was not located until June 25, 1969, when he was arrested and taken to the Local Board by the Federal Bureau of Investigation. At that time a new order to report for induction on July 10, 1969 was issued. On the same day, after issuance of the new order, Thomas filled out SSS Form 217, showing a change in his address, stating that he was married on June 18, 1967 instead of on June 24, 1967 as originally reported, and indicating the existence of a nine-week-old child, Abdul Basit, clearly not the child referred to in his original classification questionnaire of August 31, 1967. On July 9, 1969, he filed Form SSS 150 with the Board requesting conscientious objector status because:

"I (we) believe that I (we) who declared myself (ourselves) to be a righteous Muslim, should not participate in wars which take the lives of humans. I (we) do not believe this nation should force me (us) to take part in such wars for I (we) have nothing to gain from it unless America agrees to give me (us) the necessary territory wherein I (we) may have something to fight for. . . .

"I received my religious training from THE HONORABLE ELIJAH MUHAMMAD." [sic]

The form had been mailed to Thomas by the Local Board on June 30, 1969.

On July 10, 1969, Thomas reported to Tamiami Trail Bus Station, Fort Myers, Florida, as ordered to do by the Board. He got on a bus and went to the Armed Forces Entrance and Examination Station in Coral Gables, Florida, where he was tested and found fully qualified for duty. On July 11, 1969, after processing had been completed, he was ordered to step forward for induction. He refused. Thomas was afforded three opportunities to submit to induction, but persisted in his refusal. On that same date, he was arrested, indicted by the grand jury, and released on a recognizance bond. On July 22, 1969, eleven days later, the Local Board again re-

viewed Thomas's file. However, by unanimous vote the Board members decided not to reclassify registrant because it was noted, among other things, that he had been delinquent for a year, that mail addressed to him was not returned, that every effort was exhausted to locate him, and although at the time he then had a child a few months old, he was not a father until about a year after he was declared a delinquent for violations of the law in not reporting a change of address, not reporting for physical examinations, or for induction when ordered. The Local Board members felt that in view of these facts of delinquency, he should not now be granted a III–A father's classification. On October 21, 1969, Thomas was convicted for a violation of Section 462 from which he has appealed. He refused counsel at the trial below but is represented on this appeal.

■ Thomas first claims a violation of Fifth Amendment due process of law because the Local Board failed "to grant him a review of his classification [1–A], personal interview and a written ruling after his filing of his claim of conscientious objection." Thomas requested the appropriate conscientious objector forms. The forms were mailed to him on June 30, 1969, some five days *after* issuance of the Board's second order of induction, and some nine months *after* the first order. He completed the forms and filed his claim for conscientious objector status for the first time on July 9, 1969, the day before he was to report

for induction under the Board's order of June 25, 1969.

. The Supreme Court in Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), recently decided that the Ninth Circuit Court of Appeals "did not misconstrue the Selective Service regulation in holding that it barred presentation to the local board of a claim that allegedly arose between mailing of a notice of induction and the scheduled induction date." 402 U.S. at 107–108, 91 S.Ct. at 1325.[1] Under *Ehlert,* therefore, Thomas's claim for conscientious objector status came too late to prevent his induction.

Secondly, Thomas asserts a denial of due process of law on the ground that he was entitled to a paternity exemption. In his original "Classification Questionnaire" Thomas stated that his wife was expecting a baby to be born in January 1968. The record does not show that this child was born. However, on June 25, 1969, some two years later, Thomas notified the Local Board that he had a child, then nine weeks old. The claim for a paternity exemption concerns this latter child.

■ As a result of Thomas's responses in the original questionnaire, the Board wrote two letters seeking further information about the child. Thomas claims that he never received the Board's letters of inquiry. The Board's first letter was written August 31, 1967, the day after Thomas completed the Classification Questionnaire, giving his mailing address as 208 So. 3rd

---

1. 32 C.F.R. § 1625.2 reads as follows:
"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based

upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

St., Immokalee, Fla., 33934. The Board sent the letter to that address. The Board received no response to this letter or to any other of its correspondence. All of the Board's letters and notices were mailed to the address to which Thomas requested all correspondence between the Board and him should be mailed. We deem insubstantial the fact that they were sometimes addressed to "Thomas E. Lee" or "Thomas Edward Lee" rather than "Thomas, E. Lee" or "Edward Lee Thomas." A person seeking a fatherhood exemption has the duty to keep his Local Board correctly informed of his status. He is required to report in writing every change in his status to his Local Board within ten days of the change. 32 C.F.R. § 1641.7(a).

The Board's classification of Thomas as I–A on November 21, 1967 was the only classification the Board could properly make on that date under 32 C.F.R. § 1622.1(a) which requires the Board to classify a registrant solely on the basis of the record before it, and under 32 C.F.R. § 1622.10 which provides that "[i]n Class I–A shall be placed every registrant who has failed to establish to the satisfaction of the local board . . . that he is eligible for classification in another class." When Thomas was classified I–A, the Board had received no evidence which would entitle Thomas to any exemption from military service. Thomas did not provide any information to the Board, and the Board, after diligent efforts, was unable to discover such information.

■ A registrant seeking an exemption has the burden to establish his right to such an exemption. Pitcher v. Laird, 5 Cir., 1970, 421 F.2d 1272, 1278; Fitts v. United States, 5 Cir., 1964, 334 F.2d 416. The only indication that Thomas might have been entitled to an exemption was brought to the Board's attention *after* the last order to report for induction had been issued. Under the principles enunciated in *Ehlert*, supra, his claim was untimely. See United States ex rel. Johnson v. Irby, 5 Cir., 1971, 438 F.2d 114; United States v. Taylor, 5 Cir., 1971, 448 F.2d 349 (rehearing denied); United States v. Kilby, 5 Cir., 1971, 446 F.2d 1002. See also McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). We note that the change in Thomas's status which allegedly arose between the issuance of the order to report for induction and the induction date was not a change in his status beyond his control within the meaning of 32 C.F.R. § 1625.2. The child was born prior to the order to report. Notification of the fact of the birth of the child was clearly within Thomas's control.

■ Finally, Thomas asserts a violation of due process of law in that the Board allegedly accelerated the reporting date for his induction because of the Board's delinquency finding of July 23, 1968 resulting from Thomas's failure to report for a physical examination. Thomas does not claim and the record does not show any direct acceleration of the time for Thomas's induction or of a change of Thomas's position in "order-of-call" resulting from the delinquency declaration, such as were present in Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970). Rather, Thomas claims acceleration of his induction and that the Board relied on the delinquency in refusing to reclassify him when he sought exemption. He claims that the refusal of the Board to reclassify him was "in effect, accelerating his induction." The argument is without merit. The claim was filed for the first time after issuance of the second order to report for induction. There is no evidence in the record that the Board's finding of delinquency had any bearing on the issuance of its order or on Thomas's refusal to comply with that order. Gutknecht v. United States, supra, is wholly inapposite.

We have carefully reviewed all of the claims of error and find them to be without merit.

Affirmed.