**UNITED STATES of America**

v.

**Ronald S. JENKINS, Defendant.**

**No. 71–CR–1315.**

United States District Court,
E. D. New York.

Oct. 24, 1972.

As Amended Nov. 3, 1972.

Robert A. Morse, U. S. Atty., Paul Warburgh, Asst. U. S. Atty., Brooklyn, N. Y., for the United States.

James S. Carroll, New York City, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TRAVIA, District Judge.

This action having come on to be heard before this court on the 3rd day of October, 1972, and the defendant having, by duly executed stipulation approved by this court, waived a trial by jury, [Court Exh. #1], and the evidence of the parties having been adduced, and the attorneys for the parties having submitted their pretrial and post trial memoranda and upon all the papers on file in this action, and after due deliberation this court hereby makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. The defendant, Ronald S. Jenkins, is charged in a one count indictment with violation of 50 U.S.C. App. § 462(a), for failure to comply with an induction order to report and submit to induction into the Armed Forces.

2. Defendant registered with Local Board No. 50, Brooklyn, New York, on September 23, 1966.

3. On October 19, 1966, the defendant was placed in Class 2–S by the Local Board and such classification remained on an annual basis until November 18, 1970, when he was placed in Class 1–A by the said Local Board No. 50.

4. On January 20, 1971, the defendant was given a pre-induction physical at the Armed Forces Examination and Entrance Station, and was found to be medically qualified for induction.

5. On February 4, 1971, the Local Board mailed to defendant an SSS Form 252, an Order to Report for Induction, wherein the defendant was ordered to report for induction on February 24, 1971.

**1070**

6. On February 17, 1971, after receiving his induction notice, the defendant wrote to the Local Board and requested SSS Form 150 for a conscientious objector classification.

7. On February 23, 1971, the defendant went in person to the Local Board and requested Form 150. He was advised to write a short statement as to his beliefs, which he did, and he was told to report for induction on the next day because his request for a postponement of his induction had been denied.

8. The defendant did not report for induction on February 24, 1971.

9. The defendant's SSS Form 150 was received by the Local Board on March 30, 1971.

## DISCUSSION

The essence of the defendant's defense is that at the time of his alleged commission of the crime, viz., his refusal to submit to induction, the law of the Second Circuit was such that he was entitled to a postponement of his induction to enable the Board to pass on the merits of his claim for C.O. status. Defendant contends that the failure of the Board to grant such a postponement and hearing was clearly a "lawless" act under the circumstances.[1]

In the case at bar, the defendant went to the Local Board and requested a Form 150 on February 23, 1971. At that time, he was asked to write a short note which not only requested the Form 150, but which also set out the basis for his claim. This court is of the opinion that this written note fulfilled the requirement of 32 C.F.R. § 1625.2, so that the "Board may reopen the classification."

At the time the defendant Jenkins was to be inducted into the Armed Forces, the opinion in the case of United States v. Gearey[2] had construed the meaning of § 1625.2 for the court. The defendant in that case had similarly requested conscientious objector status after he had received his order to report for induction. He was convicted in the Federal District Court after refusing to take the symbolic step forward, but the United States Court of Appeals, Second Circuit, vacated the judgment of conviction and remanded the case to the District Court for further action.

In *Gearey*, the court did not hesitate to squarely face the issue of whether a person could be classified as a conscientious objector by the board if his views crystallized after he had received his induction notice. The court concluded:

"The long history of exempting conscientious objectors, coupled with the specific statutory right of appeal, indicate to us a strong Congressional policy to afford meticulous procedural protections to applicants who claim to be conscientious objectors, and indeed to grant deferments in appropriate cases. Implementation of that policy requires that any individual who raises his conscientious objector claim promptly after it matures—*even if this occurs after an induction notice is sent but before actual induction*—be entitled to have his application considered by the Local Board. *In light of this, the Local Board must first determine when an applicant's beliefs matured.* If the Board properly concludes that the claim existed before the notice was sent, the classification may not be reopened. If the Board finds, however, that the applicant's

1. 32 C.F.R. § 1625.2 reads in pertinent part:
"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant . . . provided, . . . the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

2. 368 F.2d 144 (2d Cir. 1966).

beliefs ripened only after he received his notice, and that his beliefs qualify him for classification as a conscientious objector then a change in status would have occurred 'resulting from circumstances over which the registrant had no control,' and he would be entitled to be reclassified by the Local Board." [3] (Emphasis added.)

It is clear that in the instant case, the defendant Jenkins raised his claim during the period when *Gearey* was controlling in this circuit.[4] However, the local board did not consider Jenkins' claim, as provided for under *Gearey*, and he was denied a postponement of his scheduled induction. The defendant Jenkins did not report for induction on February 24, 1971, and it is for that reason that he is before this court under indictment.

The defendant urges that the "lawless" action of the Board, in not considering his claim, should not be a basis for penalizing him, for he had been "acting consistently with applicable decisional law." The Government, in their original memorandum, maintained that the case of United States v. Ehlert, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), is retroactive, and "the local board need not consider post-induction conscientious objector claims." More recently, the Government in an effort to supplement their original argument of retroactivity, contends that the ruling in *Gearey* was clearly erroneous and as such the local boards were not obligated to follow its mandates. Such a ruling has not been made in the Second Circuit.

This court is aware that from April 21, 1971, the day *Ehlert* was decided, the Local Selective Service Boards do not have to entertain claims allegedly aris-ing within the period between the mailing of a notice of induction and the scheduled induction date. The Government, in an effort to support their contention that the local board was not bound by *Gearey*, refers this court to the following cases: Capobianco v. Melvin Laird;[5] United States v. Nordlof, 454 F.2d 739 (7th Cir. 1971); United States v. Collins, 445 F.2d 653 (9th Cir. 1971); United States v. Hand, 443 F.2d 826 (9th Cir. 1971); United States v. Kilby, 446 F.2d 1002 (5th Cir. 1971); and United States v. McKee, 446 F.2d 974 (4th Cir. 1971). Significantly, only one of the above mentioned cases was decided in our circuit and this court will, therefore, rely primarily on that case.

In *Capobianco, supra,* the Second Circuit initially applied the *Gearey* rule and thereby reversed an order of the district court which had denied an application from a member of the Armed Forces for a writ of habeas corpus. The applicant originally sought to have his conscientious objector claim considered by the Local Board, even though he had raised it after he had received his induction notice. The Court of Appeals for the Second Circuit, in light of *Gearey*, directed the district court to issue the writ. Thereafter, in a subsequent order, the same court reversed its earlier order and affirmed the district court's denial of a writ of habeas corpus. The basis of this subsequent order was the decision of the Supreme Court in the *Ehlert* case. While it appears that this second order lends support to the proposition that *Ehlert* is retroactive, we must not overlook the fact that *Capobianco* involved a soldier already in the Army who would not be subject to criminal penalties by the ret-

---

3. *Id.* at 150. Other circuits had reached an opposite conclusion. *See, e. g.,* Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970); United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966); Davis v. United States, 374 F.2d 1 (5th Cir. 1967); United States v. Taylor, 351 F.2d 228 (6th Cir. 1965).

4. *Gearey* was decided on October 21, 1966 and remained in effect until the Supreme Court's decision in the *Ehlert* case, which decision was handed down April 21, 1971. The facts in this case clearly indicate that Jenkins comes within the "pre-Ehlert" period.

5. Capobianco v. Melvin Laird, 424 F.2d 1304 (2d Cir. 1971), was vacated by a subsequent order of the Second Circuit dated July 1, 1971. (69–C–1039)

roactive application of Ehlert.[6] In the case at bar, the retroactive effect of *Ehlert* would be to render illegal the conduct of Jenkins, when at the time he pursued this course it was incumbent upon the local board to consider his claim prior to induction.

 It is well settled, that where contrary rulings have been made in other circuits, this court would be permitted, in the absence of any decisional guidance from our own circuit, to chart its own course. However, the *Gearey* case was decided by our circuit and, therefore, this court is constrained to abide by its teachings. Further, even accepting *arguendo* that this court would follow the ruling of a foreign circuit, the *Nordlof* case, *supra*, would not be of any aid to the Government in its contention that *Ehlert* is retroactive. In that case, the settled law of the circuit at the time when *Nordlof* refused induction was that § 1625.2 did not allow post-induction notice claims to be heard by the Board.[7] Thus, the defendant would not be prejudiced by a retroactive application of *Ehlert*, for it would only serve to affirm the settled law of the circuit. It cannot be overemphasized that the decisional law of this circuit, when Jenkins refused induction, was that the Board was obligated to entertain his claim and pass upon it. Similarly, the *Collins, Hand, Kilby,* and *McKee* cases, [*supra*], all involved instances where *Ehlert* was not overturning the case law as it had

previously existed in those circuits.[8] Accordingly, those defendants would not be prejudiced, as the defendant Jenkins would be, by a retroactive application of *Ehlert*; when they refused induction they had not been apprised of the fact, through the interpretation of § 1625.2 in that circuit, that they would have to be heard by the Board on their claims.

This court's own research has disclosed one significant case which must be discussed, and that is United States v. Johnson, 443 F.2d 189 (2d Cir. 1971). On October 9, 1969, defendant Johnson was mailed his Order to Report for Induction, which was fixed for November 9, 1969. Defendant appeared at the Board on October 17, 1969, and requested an application for conscientious objector status, which was given to him. At the same time, his induction date was postponed, "pending C.O. review." Some two months later, on December 18, 1969, the Local Board notified Johnson that it was cancelling his postponement of induction for failure to return his SSS Form 150 (for conscientious objectors), and he was again ordered to report for induction, which he refused to do. He was later convicted for failure to report for induction into the Armed Forces, as mandated by 50 U.S.C. App. § 462(a), and his conviction was affirmed.

While *Gearey* was controlling at the time Johnson refused induction, the Court of Appeals concluded that the Lo-

---

6. This court is of the opinion that the language in the *Ehlert* case does not in and of itself support the contention that the Supreme Court's ruling is to be applied retroactively in all cases.

7. *See* Porter v. United States, 334 F.2d 792 (7th Cir. 1964).

8. Indeed, the law of the Fourth Circuit [United States v. Al-Majied Muhammad, 364 F.2d 223 (4th Cir. 1966)] and the Fifth Circuit [Davis v. United States, 374 F.2d 1 (5th Cir. 1967)] had been consistent with the subsequent *Ehlert* decision when the defendants refused induction in *McKee* and *Kilby*. It had

been unsettled in the Ninth Circuit when the defendants refused induction in the *Collins* and *Hand* cases mentioned, *supra*. The subsequent Supreme Court *Ehlert* decision, which decided the issue adversely against the defendants, came from the Ninth Circuit, however. *See* Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970).

In this area consider also the recent cases of United States v. Cotton, 346 F.Supp. 691 (D.C.1972), and United States v. Shomock, 462 F.2d 338 (3d Cir. 1972), which, however illuminating, are nonetheless distinguishable from the case at bar.

cal Board had not reopened Johnson's file. Specifically, the court stated that:

> ". . . it appears that all that happened was that the Board was considering whether to reopen defendant's classification, and chose not to."

The circumstances described in the *Johnson* case, *supra*, at first blush seem to be dispositive of the case at bar. Yet a careful reading will disclose that the situation in *Johnson* differs from that in Jenkins in that Johnson was given an opportunity to be heard *via* the postponement. It was through his own delay of two months in failing to return Form 150 that subjected him again to induction after it had already been once postponed. It cannot be over-emphasized that the postponement granted Johnson was for the obvious purpose of allowing him to pursue his claim through the completion of Form 150. The defendant in this case, on the other hand, was *denied* postponement only one day prior to his induction date; he was given no opportunity to be heard on his claim. Hence, it was not a situation as in *Johnson*, where the late filing of Form 150 would serve to ". . . indefinitely . . . postpone his duty to report." United States v. Johnson, 443 F.2d 189, 192 (2d Cir. 1971).

[redacted] In closing, this court must emphasize that its decision with respect to the defendant must not be overread. In this case, Jenkins would be clearly prejudiced by any attempt to apply, retroactively, the Supreme Court's decision in *Ehlert*. This court cannot permit the criminal prosecution of the defendant under these circumstances without seriously eroding fundamental and basic equitable principles of law. This is not to say, however, that under other circumstances a retroactive reading of Ehlert would not be warranted.

## CONCLUSIONS OF LAW

1) The indictment in this case is dismissed and the defendant is discharged.

2) The conclusion of this court is not to be construed as relieving this defendant of his obligation under the Uniform Military Training & Service Act. Local Board No. 50 is directed to reopen the case of this defendant to consider his application for C.O. status in accordance with the regulations.